UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

1  GRACE GONZALEZ GARCIA, et al.,

2      Plaintiffs,

3                                          Civil No. 98-1894 (JAF)

4      v.

5  PUERTO  RICO  ELECTRIC  POWER
   AUTHORITY, et al.,

6

7      Defendants.

8  ----------------------------------

9              **OPINION AND ORDER**

10      Plaintiffs, Grace González García, her husband, Jorge Bracero

11  Landrón, and their conjugal partnership, bring the present action

12  against Plaintiff González García's former employer, Puerto Rico

13  Electric Power Authority ("PREPA"), and its executive director,

14  Miguel A. Cordero. Docket Document No. 1. Plaintiffs' complaint

15

16  alleges violations of the Americans with Disabilities Act ("ADA"), 42

17  U.S.C. §§ 12101-213 (1994 & Supp. I 2001), the Age Discrimination in

18  Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634 (1994 & Supp. I

19  2001), Puerto Rico Law 100, 29 L.P.R.A. §§ 146-151 (1995 & Supp. I

20  1998), Puerto Rico Law 44, 1 L.P.R.A. §§ 501-511 (1999), and 42 U.S.C.

21  § 1983 (1994 & Supp. I 2001). Id.

22

23      On March 6, 2000, this court endorsed a voluntary dismissal of

24  Plaintiffs' ADA and ADEA claims against Defendants. Docket Document

25  No. 30. Defendant PREPA moves for summary judgment on the ground that

26

Civil No. 98-1894 (JAF)                                        -2-

Plaintiff González García's section 1983 claims are time-barred. Docket Document No. 46. Defendant Cordero moves to dismiss Plaintiffs' complaint for failure to state a claim upon which relief can be granted. Docket Document No. 49. Plaintiffs oppose the motions. Docket Document Nos. 50, 53.

**I.**

**Factual and Procedural Synopsis**

Unless otherwise indicated, we derive the following factual summary from Plaintiffs' complaint. Docket Document No. 1

Defendant PREPA is a public corporation and an instrumentality of the commonwealth of Puerto Rico.  Defendant Miguel A. Cordero is the executive director of PREPA and is a resident of Puerto Rico. Plaintiffs' González García and Bracero Landrón are residents of Puerto Rico.  Plaintiff González García is affiliated with the Partido Popular Democrático (Popular Democratic Party, "PPD") and Defendant Cordero is associated with the Partido Nuevo Progresista (New Progressive Party, "NPP").

On February 13, 1984, Plaintiff González García[1] began working as a temporary employee in the Human Resources Department of PREPA. Docket Document No. 46, Exh. 1.  Plaintiff became a permanent employee of PREPA on August 11, 1985. Id. at Exh. 2.   In 1991, Plaintiff

---

[1]Future references to "Plaintiff" allude to Plaintiff González García.

Civil No. 98-1894 (JAF)                                                    -3-

González García became a General Supervisor of the Department of Human Resources Evaluation at PREPA. Docket Document No. 53, Exhs. I, II. Plaintiff contends that her position did not involve functions of trust or the implementation of public policy. Id.

     While employed at PREPA, Plaintiff González García actively participated in and organized PPD activities and events, and she informed her co-workers and supervisors of her political affiliation. Id. at Exh. I.

     Plaintiffs allege that when Defendant Cordero was appointed as the executive director of PREPA he immediately began a campaign to rid PREPA of employees associated with the PPD.  Plaintiffs allege that Cordero demoted or removed thirteen PPD-affiliated employees, and replaced them with members of the NPP. See id.

     Plaintiffs also assert that Defendant Cordero began a campaign of discrimination and harassment against Plaintiff González García based on her political ideology, in an attempt to force her to resign from her job. Id.

     Plaintiffs assert that Plaintiff's supervisors made derogatory, harassing remarks to Plaintiff and other employees affiliated with the PPD. Id.  According to Plaintiff González García, Defendant PREPA's officers "constantly" told her that they intended to "get rid of" and "cut the throats" of the PPD members. Id.

Civil No. 98-1894 (JAF)                                          -4-

Plaintiff González García alleges that on July 18, 1993, she was demoted in title, salary, and benefits, and was transferred to the Office of Health and Occupational Security to work as an Administrative Affairs Supervisor in the Preventative Health Program. She contends that she was demoted without any explanation, and that her previous position was filled by an employee associated with the NPP. Id.

Plaintiffs claim that Defendants PREPA and Cordero constantly added extra functions and duties to Plaintiff González García's new position, and that her supervisors told Plaintiff that she performed these duties too slowly. Id.

Plaintiff González García also alleges that Defendants PREPA and Cordero refused to promote her based on her political affiliation. Id. Plaintiffs allege that Defendant PREPA assigned Magali Alverio to the position of Supervisor of the Department of Human Resources Evaluation, and that Plaintiff González García rightfully deserved that position. Id.

In response to the purported discrimination, Plaintiff González García filed a number of internal grievances.  On March 4, 1994, Plaintiff filed an internal grievance alleging that she was illegally demoted and replaced based on her political affiliation. Id. at Exh. V.  On March 8, 1994, Plaintiff González García filed an official

Civil No. 98-1894 (JAF)                                    -5-

complaint, alleging that the assignment of an NPP employee to the position of Supervisor of the Department of Human Resources Evaluation was an act of political discrimination. Id. at Exh. IV

Plaintiffs allege that Defendant PREPA's administrative grievance system was biased and futile, and that no action was taken in response to Plaintiff González García's complaints.

Plaintiff González García filed a grievance with Defendant PREPA's Office of Equal Opportunity in Employment on November 15, 1995, alleging harassment by one of her supervisors. See id. at Exhs. I, X. On August 23, 1996, Plaintiff wrote a letter to Defendant Cordero, explaining that she felt her supervisors at PREPA were harassing her and discriminated against her. See id. at Exh. I, IV. On July 9, 1997, Plaintiff González García filed a complaint with the Anti-Discrimination Unit ("ADU") of the Department of Labor and Human Resources, in which she asserted political discrimination on the basis of her affiliation with the PPD. Docket Document No. 46, Exh. 3

Plaintiff took a leave of absence due to a physical injury on July 24, 1997. Id. at Exh. 4. Plaintiff proffers her own affidavit in which she asserts that while she was on leave from PREPA, her supervisors called her at home almost every day and told her that she must return to work or she would lose her job. Docket Document No. 53,

Civil No. 98-1894 (JAF)                                         -6-

Exh. I.   Plaintiff González García did not return to work at PREPA

after July 24, 1997. Docket Document No. 46, Exh. 5

Plaintiff González García submitted a letter of resignation on

March 24, 1998. Docket Document No. 46, Exh. 6.   Her resignation

became effective on March 31, 1998. Id.

Plaintiffs González García and Bracero Landrón filed the present

action on August 4, 1998. Docket Document No. 1.   In the complaint,

Plaintiff González García alleged that Defendants discriminated

against her based on her disability in violation of the ADA.

Plaintiff González García also claimed that Defendants PREPA and

Cordero discriminated against her based on her age, in violation of

the ADEA.   On March 6, 2000, Plaintiffs moved for a voluntary

dismissal with regard to these causes of actions. Docket Document

No. 30.

Plaintiffs continue to assert that Defendants PREPA and Cordero

discriminated against Plaintiff González García based on her political

beliefs and affiliation, in violation of 42 U.S.C. § 1983 and state

law.

On May 21, 1999, Defendant Cordero filed a motion to dismiss.

Docket Document No. 7.   Defendants Cordero and PREPA filed an

additional motion to dismiss on January 7, 2000. Docket Document

No. 23. On October 12, 2001, we denied Defendants' motions to dismiss

Civil No. 98-1894 (JAF)                                                    -7-

without prejudice in accordance with Local Rule 311.2. <u>See</u> D.P.R. Loc.

R. 311.2. <u>Docket Document No. 45</u>.

Defendant PREPA filed a motion for summary judgment on

October 22, 2001, arguing that Plaintiff González García's section

1983 claim is time-barred. <u>Docket Document No. 46</u>. Plaintiff opposes

the motion. <u>Docket Document 53</u>. Defendant PREPA filed a reply on

March 14, 2002. <u>Docket Document No. 57</u>.

Defendant Cordero filed a motion to dismiss on November 5, 2001

on the grounds that: (1) Plaintiff González García has failed to state

a claim pursuant to section 1983; (2) her section 1983 claim is time-

barred; (3) Defendant Cordero is shielded from liability by the

doctrine of qualified immunity; (4) Plaintiff Bracero does not have

standing to assert a claim under section 1983; and (5) this court

should decline to assert supplemental jurisdiction over Plaintiffs'

state law claims. <u>Docket Document No. 49</u>. Plaintiff opposes the

motion on the exclusive ground that Defendant Cordero's motion is

untimely. <u>Docket Document No. 50</u>.

**II.**

**<u>Standards</u>**

**A.     <u>Motion to Dismiss Under Rule 12(b)(6)</u>**

Under Rule 12(b)(6), a defendant may move to dismiss an action

against him based solely on the pleadings for the plaintiff's "failure

Civil No. 98-1894 (JAF)                                               -8-

to state a claim upon which relief can be granted . . . ." Id.   In

assessing a motion to dismiss, "[w]e begin by accepting all well-

pleaded facts as true, and we draw all reasonable inferences in favor

of the [nonmovant]." Wash. Legal Found. v. Mass Bar Found., 923 F.2d

962, 971 (1st Cir. 1993); see also Coyne v. City of Somerville, 972

F.2d 440, 442-443 (1st Cir. 1993).   We then determine whether the

plaintiff has stated a claim under which relief can be granted.

**B.   Motion for Summary Judgment Under Rule 56(c)**

The standard for summary judgment is straightforward and

well-established.   A district court should grant a motion for summary

judgment "if the pleadings, depositions, and answers to the

interrogatories, and admissions on file, together with the affidavits,

if any, show that there is no genuine issue as to any material fact

and the moving party is entitled to a judgement as a matter of law."

FED. R. CIV. P. 56(c); see Lipsett v. Univ. of P.R., 864 F.2d 881, 894

(1st Cir. 1988).   A factual dispute is "material" if it "might affect

the outcome of the suit under the governing law," and "genuine" if the

evidence is such that "a reasonable jury could return a verdict for

the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248 (1986).

The burden of establishing the nonexistence of a genuine issue as

to a material fact is on the moving party. See Celotex Corp. v.

Civil No. 98-1894 (JAF)                                                -9-

*Catrett*, 477 U.S. 317, 331 (1986).  This burden has two components:
(1) an initial burden of production, which shifts to the nonmoving
party if satisfied by the moving party; and (2) an ultimate burden of
persuasion, which always remains on the moving party. See *id.*   In
other words, "[t]he party moving for summary judgement, bears the
initial burden of demonstrating that there are no genuine issues of
material fact for trial." *Hinchey v. NYNEX Corp.*, 144 F.3d 134, 140
(1st Cir. 1998).  This burden "may be discharged by showing that there
is an absence of evidence to support the nonmoving party's case."
*Celotex*, 477 U.S. at 325.  After such a showing, the "burden shifts to
the nonmoving party, with respect to each issue on which he has the
burden of proof, to demonstrate that a trier of fact reasonably could
find in his favor." *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir.
1997) (citing *Celotex*, 477 U.S. at 322-25).

    Although the ultimate burden of persuasion remains on the moving
party and the court should draw all reasonable inferences in favor of
the nonmoving party, the nonmoving party will not defeat a properly
supported motion for summary judgment by merely underscoring the
"existence of some alleged factual dispute between the parties"; the
requirement is that there be a genuine issue of material fact.
*Anderson*, 477 U.S. at 247-48; *Goldman v. First Nat'l Bank of Boston*,
985 F.2d 1113, 1116 (1st Cir. 1993).  In addition, "factual disputes

Civil No. 98-1894 (JAF)                                      -10-

that are irrelevant or unnecessary will not be counted." <u>Anderson</u>, 477

U.S. at 248.    Under Rule 56(e) of the Federal Rules of Civil

Procedure, the non-moving party "may not rest upon the mere

allegations or denials of the adverse party's pleadings, but . . .

must set forth specific facts showing that there is a genuine issue

for trial." FED. R. CIV. P. 56(e); <u>see also</u> <u>Anderson</u>, 477 U.S. at 256.

Summary judgment exists to "pierce the boilerplate of the pleadings,"

<u>Wynne v. Tufts Univ. Sch. of Med.</u>, 976 F.2d 791, 794 (1st Cir. 1992),

and "determine whether a trial actually is necessary." <u>Vega-Rodriguez</u>

<u>v. P.R. Tel. Co.</u>, 110 F.3d 174, 178 (1st Cir. 1997).

III.

<u>Analysis</u>

**A.    Defendant PREPA**

    Defendant PREPA moves for summary judgment on the ground that

Plaintiff's section 1983 action is time-barred because Plaintiff has

not alleged that any incident of discrimination occurred in the one-

year period before Plaintiff filed this suit on August 4, 1998. <u>Docket</u>

<u>Document No. 46</u>.

    Plaintiff contends that PREPA's officers continuously

discriminated against her for a five-year period, which culminated in

her resignation on March 24, 1998.    Plaintiff maintains that her

resignation constitutes a constructive discharge, and that

Civil No. 98-1894 (JAF)                                        -11-

constructive discharge is an act of discrimination for purposes of section 1983.   As such, Plaintiff maintains that the last act of discrimination by Defendant PREPA occurred within the applicable one-year statute of limitations.  Docket Document No. 53

### 1.   Applicable Statute of Limitations

To determine the applicable statute of limitations for this action, we first turn to Section 1983 to determine its provisions. Section 1983, however, lacks an accompanying federal statute of limitations.[2] See 42 U.S.C. § 1983.   Consequently, we adopt relevant provisions from the analogous statute of limitations of the forum state. See Wilson v. Garcia, 471 U.S. 261, 266-80 (1985) (directing federal courts in section 1983 actions to borrow and apply a state's statute of limitations for personal injury cases).

For section 1983, the most appropriate provision is the statute of limitations for personal injury cases. See Owens v. Okure, 488 U.S.

---

[2]Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Civil No. 98-1894 (JAF)                                                    -12-

235, 236 (1989). In Puerto Rico, a one-year statute of limitations

governs personal injury actions. See 31 L.P.R.A. § 5298(2) (1991).[3]

Therefore, we apply the one-year prescriptive period to Plaintiffs'

section 1983 action. See Rivera-Ramos v. Román, 156 F.3d 276, 282 (1st

Cir. 1998).

2.    **Date of Accrual**

"Although the limitations period is determined by state law, the

date of accrual is a federal law question." Carreras-Rosa v. Alves-

Cruz, 127 F.3d 172, 174 (1st Cir. 1997) (per curiam); see also Rivera-

Ramos, 156 F.3d at 282 ("For section 1983 actions, federal law governs

the date on which a cause of action accrues (i.e., when the statute

begins to run) while the length of the period and tolling doctrine are

taken from local law.") (internal citations omitted).  The one-year

statute of limitations "begins running one day after the date of

accrual, which is the date plaintiff knew or had reason to know of the

injury." Benitez-Pons v. P.R., 136 F.3d 54, 59 (1st Cir. 1998)

(internal citations omitted).

---

[3]Section 5298 stipulates:

    The following prescribe in one (1) year:
    . . . .
    (2)   Actions to demand civil liability for grave
          insults or calumny, and for obligations arising
          from the fault or negligence mentioned in
          section 5141 of this title, from the time the
          aggrieved person had knowledge thereof.

31 L.P.R.A. § 5298.

Civil No. 98-1894 (JAF)                                    -13-

"It is by now well established that, in employment discrimination actions, limitations periods normally start to run when the employer's decision is made and communicated to the affected employee." Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 750 (1st Cir. 1994) (section 1983 case) (citing Delaware State Coll. v. Ricks, 449 U.S. 250, 261 (1980)).  A plaintiff does not need to know of the discriminatory animus behind the adverse employment action for the statute of limitations to begin to run. Morris, 27 F.3d at 749-750.  Furthermore, a plaintiff does not need to know all of the facts supporting her claim before the statute of limitations may commence. Id. at 750 (internal citations omitted).  Rather, unambiguous and authoritative notice of the adverse employment action is all that is required to trigger the limitations period. See Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 353 (1st Cir. 1992) (section 1983 case).

     3.    Alleged Acts of Discrimination

     "The first step in fixing accrual is to identify the actual injury of which the plaintiff complains." Guzman-Rivera v. Rivera-Cruz, 29 F.3d 3, 5 (1st Cir. 1994).

     Plaintiff bases her section 1983 action on the following alleged incidents of political discrimination: (1) a July 18, 1993 transfer with a concomitant loss of duties and reduction in salary; (2) the denial of transfers and promotions to which she was entitled;

Civil No. 98-1894 (JAF)                                          -14-

(3) unreasonable work assignments and deadlines; (4) derogatory remarks related to Plaintiff's political affiliation; (5) the lack of remedial measures to stop the harassment; (6) the manipulation of the internal grievance procedures; and (7) a constructive discharge on March 24, 1998. See Docket Document No. 53.

Plaintiff left work due to a physical injury on July 24, 1997. She filed suit over a year later, on August 4, 1998. Since Plaintiff's suit is governed by a one-year statute of limitations, any alleged discriminatory act that occurred while she was still physically present at PREPA is necessarily time-barred.

Although Plaintiff acknowledges that many of the purportedly discriminatory acts occurred outside of the statute of limitations period, she asserts that she was harassed and constructively discharged in the one-year period before she filed suit. Id. We evaluate infra when and if Plaintiff's claims of harassment and constructive discharge accrued.

   **4.   Tolling of the Statute of Limitations: Extrajudicial Claims**

Article 1873 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5303 (1991), governs the interruption of the one-year statute of limitations period in personal injury actions. Tokyo Marine & Fire Ins. Co. v. Perez & Cia de P.R., Inc., 142 F.3d 1, 4 (1st Cir. 1998). Section 5303 provides that the "[p]rescription of actions is

Civil No. 98-1894 (JAF)                                              -15-

interrupted by their institution before the courts, by extrajudicial

claim of the creditor, and by any act of acknowledgment of the debt by

the debtor." 31 L.P.R.A. § 5303.  Plaintiff carries the burden of

proving that the prescriptive period has been tolled. Tokyo Marine,

142 F.3d at 4.

Plaintiff filed a claim against Defendants with the Puerto Rico

Department of Labor on July 9, 1997, which alleged political

discrimination and harassment. Docket Document No. 53, Exhs. I, XII.

We need not decide whether this complaint constitutes an

extrajudicial claim or whether it tolled the statute of limitations.

Extrajudicial tolling under 31 L.P.R.A. § 5303 restarts the statute

of limitations on the date of the extrajudicial claim. See Tokyo

Marine, 142 F.3d at 4 ("[W]hen the prescriptive period is successfully

interrupted, the full period begins to run again.") (internal

citations omitted); see also Diaz de Diana v. A.J.A.S. Ins. Co., 110

D.P.R. 471, 475, 110 P.R. Offic. Trans. 597, 606 (1980) ("The letter

sent on April 15, 1974 . . . was an extrajudicial claim.  On that

date, a new one-year period of limitations began to run."); see also

Leon-Nogueras v. Univ. of P.R., 964 F. Supp. 585, 589 (D.P.R. 1997)

("The pendency of [ADU] administrative proceedings does not maintain

the section 1983 claim in a state of suspended animation.") (internal

citations omitted).   Therefore, even if we were to construe

Civil No. 98-1894 (JAF)                                      -16-

Plaintiff's complaint with the ADU as an extrajudicial claim, its

effect would be to restart the limitations period on July 9, 1997.

Since Plaintiffs did not file suit within a year of the date she filed

the ADU complaint, the tolling provision does not impact our analysis

in the present case.

### 5.    Equitable Tolling: Continuing Violation Theory

Plaintiff contends that she was continuously discriminated

against for a period of five years.  Specifically, Plaintiff invokes

the continuing violation doctrine, and contends that she experienced

a series of discriminatory incidents, which eventually forced González

to resign from her employment, on March 24, 1998. Docket Document

No. 53.

The continuing violation doctrine creates an equitable exception

to the statute of limitations when unlawful behavior is alleged to be

ongoing. See Provencher v. CVS Pharmacy, 145 F.3d 5, 13 (1st Cir.

1998).  In effect, the continuing violation theory allows a plaintiff

to prosecute claims that would otherwise be time-barred.  However,

"[t]he [continuing violation] doctrine is generally thought to be

inapposite when an injury is definite, readily discoverable, and

accessible in the sense that nothing impedes the injured party from

seeking to redress it." Dziura v. United States, 168 F.3d 581, 583 (1st

Civil No. 98-1894 (JAF)                                    -17-

Cir. 1999) (rejecting plaintiff's continuing violation theory in taxpayer suit against IRS).

"The continuing violation theory, which had its genesis in decisions interpreting Title VII of the Civil Rights Act of 1964, has been applied in a wide variety of circumstances." Velázquez v. Chardón, 736 F.2d 831, 833 (1st Cir. 1984) (internal citation omitted). The First Circuit employs the continuing violation theory to evaluate the timeliness of section 1983 actions. See id.; see also Muñiz-Cabrero v. Ruiz, 23 F.3d 607, 610 (1st Cir. 1994).

To establish a continuing violation under section 1983, a plaintiff "'must allege that a discriminatory act occurred or that a discriminatory policy existed' within the period prescribed by the statute." Johnson v. Gen. Elec., 840 F.2d 132, 137 (1st Cir. 1988) (quoting Velázquez v. Chardón, 736 F.2d 831, 833 (1st Cir. 1984)). "[A] complaint must indicate that not only the injury, but the discrimination, is in fact on-going." Goldman v. Sears, Roebuck & Co., 607 F.2d 1014, 1018 (1st Cir. 1979); Velázquez v. Chardón, 576 F.Supp. 476, 477 (D.P.R. 1983).

Continuing violations are of two types: serial or systemic. Kassaye v. Bryant Coll., 999 F.2d 603, 606 (1st Cir. 1993).

Civil No. 98-1894 (JAF)                                              -18-

## (a) Systemic Violations

Systemic violations refer to the general practices and policies of an employer, such as systems of hiring, training, and promotion. See Provencher, 145 F.3d at 14. Systemic violations "need not involve an identifiable, discrete act of discrimination transpiring within the limitation[s] period." Muñiz-Cabrero, 23 F.3d at 610 (quoting Jensen v. Frank, 912 F.2d 517, 523 (1st Cir. 1990)). To establish a systemic violation, a plaintiff must allege that she has been harmed by the application of a discriminatory practice or policy that continued or is continuing into the statutory time period. Muñiz-Cabrero, 23 F.3d at 610.

In her sur-reply, Plaintiff argues that Defendants PREPA and Cordero committed systemic violations by replacing PPD-affiliated employees with those associated with the NPP.

It is not necessary for us to consider whether these 1993 replacements constitute a discriminatory policy because Plaintiff has not alleged that the purportedly discriminatory policy continued into the prescriptive period nor has she produced evidence to this effect. See Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 184 (1st Cir. 1989) (rejecting systemic violation theory where plaintiff presented no evidence that a discriminatory policy continued into the statutory period). Therefore, we reject Plaintiff's argument that her complaint

Civil No. 98-1894 (JAF)                                    -19-

is not time-barred because Defendants have committed a systemic violation.

   **(b)   Serial Violation**

   Plaintiff also alleges that she experienced a serial violation. See Docket Document No. 53.   A serial violation is "composed of a number of discriminatory acts emanating from the same discriminatory animus, each act constituting a separate [actionable] wrong." Jensen, 912 F.2d at 522.

   Here, Plaintiff filed her complaint on August 4, 1998.  For her lawsuit to be timely, Plaintiff must allege that a discriminatory act occurred in the one-year period prior to the date she filed this complaint. Mack, 871 F.2d at 183); see also Muñiz-Cabrero, 23 F.3d at 610; Velázquez, 736 F.2d at 833.

   Plaintiff maintains that during the one-year period before she filed suit she was harassed and constructively discharged. Docket Document No. 53.

   We evaluate whether Plaintiff has presented evidence which establishes a genuine issue of material fact as to the occurrence of the purported acts of discrimination. See Lopez-Carrasquillo v. Rubianes, 230 F.3d 409, 413 (1st Cir. 2000) (explaining that where a plaintiff has failed to establish predicate acts of discrimination,

Civil No. 98-1894 (JAF)                                                    -20-

there is no need to consider whether such conduct was timely or constituted a continuing violation).

### (i)  **Harassment**

Plaintiff submits her own affidavit dated December 21, 2001, in which she attests that she was continuously harassed for a period of five years. See Docket Document No. 53, Exh. I. Plaintiff avers that in the year before she filed suit, she was harassed over the phone by her supervisors, who ordered her to return to work. Id.  In her affidavit, Plaintiff asserts that while she was at home, recovering from her injury, she received frequent telephone calls from her supervisors, Jorge Cuevas and Yelitza García, ordering her to return to work and threatening her with disciplinary actions. Id.

Defendant PREPA moves to strike this affidavit testimony on the ground that it clearly contradicts Plaintiff's September 22, 1999 deposition testimony. Docket Document No. 55

During Plaintiff's deposition, she testified that she received many telephone calls at home while she was on leave from PREPA, and that these were apparently social calls to see how she was doing. Id. at Exh. A.  She did not testify that her supervisors harassed or threatened her.[4] Id.

_____

[4]The relevant deposition testimony is as follows:

Q: You never returned to work. And you were never within the environment of the office?

Civil No. 98-1894 (JAF)                                                    -21-

1        "When an interested witness has given clear answers to

2   unambiguous questions, he cannot create a conflict and resist summary

3   judgment with an affidavit that is clearly contradictory, but does not

4   give a satisfactory explanation of why the testimony is changed."

5   Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 35 (1st Cir. 2001)

6   ─────────────────────

7            A: The environment, as such, yes I was, because I
             received many telephone calls at home.
8            Q: Uhum. From whom?
             A: Well from the personnel there, from Mr. Jorge
9            Cuevas, who called me a lot, well my fellow workers
             called me a lot to see how I was doing, even Mrs.
10           Yelitza Garcia called me also.
             Q: They were social calls to find out how you were
11           doing?
             A: Apparently.
12           Q: Aside for asking you how you felt, did they ask
             you anything else, did they refer to anything else?
13           A: Yes, I remember one call from Mrs. Yelitza Garcia
             . . . when I answered she said 'Oh I thought I was
14           not going to find you at home, because I call there
             and you are never in,' . . . when she achieved
15           contacting me she always said that she called my
             house and couldn't get me.
16           Q: Okay. Aside from greeting you and giving you best
             wishes at Christmas and asking where you were going
17           to spend New Year's Eve, were any other calls made?
             A: Mr. Jorge Cuevas called me every week, he called
18           me.
             Q: At any time did you have a friendship with Mr.
19           Jorge Cuevas?
             . . .
20           A: I cannot say I had a friendship relationship with
             him, because he was not my friend, he was simply my
21           fellow worker in the Authority and that was simply
             the only place we saw each other. . .
22           . . .
             Q: Nor did you give each other gifts, nor anything?
23           A: He, he put a lot of gifts on the desk.
             Q: Why?
24           A: I don't know, because apparently he told me that
             he liked me and he was always giving me some type of
25           small gift. . . . .

26   Docket Document No. 55, Exh. A.

Civil No. 98-1894 (JAF)                                      -22-

(citing <u>Colantuoni v. Alfred Calcagni & Sons</u>, 44 F.3d 1, 4-5 (1st Cir. 1994)).

Plaintiff's affidavit testimony that she received harassing, discriminatory telephone calls during her leave of absence directly contravenes her earlier deposition testimony that she received frequent, apparently social phone calls.  This contradiction is not explained or justified.  As such, we do not consider Plaintiff's affidavit stating that she received harassing phone calls. <u>See</u> <u>Morales</u>, 246 F.3d at 35.

Based on the record before us, there is no admissible evidence that Plaintiff received harassing phone calls from her supervisors in the year before she filed the suit.  We find that Plaintiff has not created a genuine issue of material fact as to this alleged incident of discrimination, and we will not consider it as a timely act of discrimination for purposes of evaluating Plaintiff's continuing violation theory.

(ii) <u>Constructive Discharge</u>

Plaintiff maintains that she was constructively discharged on March 24, 1998, and that her constructive discharge is an act of discrimination.  Defendant PREPA argues that Plaintiff's resignation is untimely, and that, at that at the most, it should be construed as a mere consequence of past discrimination.

Although resignation is ordinarily not a discriminatory act, when a resignation constitutes a constructive discharge, it is considered a discriminatory act. See Draper v. Coeur Rochester, Inc. 147 F.3d 1104, 1110-11 (9th Cir. 1998) (quoting Young v. Nat'l Center for Health Servs. Research, 828 F.2d 235, 238 (4th Cir. 1987)).  To establish a constructive discharge, a plaintiff must show "working conditions so intolerable . . . that a reasonable person would feel compelled to forsake his job rather than to submit to looming indignities." Landrau-Romero v. Banco Popular de P.R., 212 F.3d 607, 613 (1st Cir. 2000) (internal citations omitted)

However, "[i]f a plaintiff does not resign within a reasonable time period after the alleged harassment, he was not constructively discharged." Id. (citing Smith v. Bath Iron Works Corp., 943 F.2d 164, 167 (1st Cir. 1991)).  In Smith, the First Circuit found that no constructive discharge occurred where plaintiff quit six months after the last reported incident of sex discrimination.  Similarly, in Landrau-Romero, the First Circuit held that a seven-month gap between the alleged employment discrimination and plaintiff's resignation was too great a time period to find that plaintiff had been constructively discharged. 212 F.3d at 613.

As we explicated supra, Plaintiff has not established that any act of political harassment or discrimination occurred after she left

Civil No. 98-1894 (JAF)                                                    -24-

work on July 24, 1997.  In her complaint filed with the ADU, Plaintiff

asserts that the last act of discrimination occurred on June 18, 1997.

Plaintiff resigned on March 24, 1998, eight months after she took a

leave of absence fron PREPA and nine months after the last alleged act

of discrimination.

    Plaintiff has not established that any act of harassment occurred

within a reasonable time of her resignation, and we find that she

cannot establish a claim of constructive discharge.

    Plaintiff has not stated a timely claim of harassment or

constructive discharge.  Since Plaintiff has not sufficiently

established that any act of political discrimination occurred in the

one-year period before she filed the present action, her section 1983

claim is time-barred.

**B.    Defendant Cordero**

    Given the advanced procedural posture and developed record that

exists in the present case, we intend to treat Defendant Cordero's

motion to dismiss, Docket Document No. 49, as a motion for summary

judgment. See Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 60

(1st Cir. 2000) ("We have interpreted Rule 12(b) as requiring some type

of notice as a condition precedent to a court's conversion of a motion

to dismiss into one for summary judgment."); see also Rogan v. Menino,

175 F.3d 75, 179 (1st Cir. 1999).

Civil No. 98-1894 (JAF)                                          -25-

Plaintiffs are ordered to show cause why we should not enter summary judgment in favor of Defendant Cordero on statute of limitations grounds. Plaintiffs have ten (10) calendar days from the date that this Opinion and Order is entered into the record to submit any additional material regarding the timeliness issue.

IV.

Conclusion

In accordance with the foregoing, we **GRANT** Defendant PREPA's motion for summary judgment on the ground that Plaintiff González García's section 1983 claims are time-barred. Docket Document No. 46.

We defer judgment as to Defendant Cordero's motion to dismiss. Docket Document No. 49.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this _12th_ day of July, 2002.

JOSE ANTONIO FUSTE
U. S. District Judge

Escanellas
Cortés
Maldonado
González
Colón
7/16/02