1  UNITED STATES DISTRICT COURT
2  DISTRICT OF PUERTO RICO
3
4  GRACE GONZALEZ GARCIA, et al.,
5
6      Plaintiffs,
7                                          Civil No. 98-1894 (JAF)
8      v.
9
10 PUERTO  RICO  ELECTRIC  POWER
11 AUTHORITY, et al.,
12
13     Defendants.
14 ┆ ------------------------------------
15

16                    **OPINION AND ORDER**

17      Plaintiffs, Grace González García ("González García"), her

18 husband, Jorge Bracero Landrón, and their conjugal partnership, filed

19 the  present  action  against  Plaintiff  González  García's  former

20 employer, Puerto Rico Electric Power Authority ("PREPA"), and its

21 executive  director,  Miguel  A.  Cordero,  alleging,  <u>inter  alia</u>,

22 political discrimination, in violation of 42 U.S.C. § 1983 (1994 &

23 Supp. 2002) and Puerto Rico law. <u>Docket Document No. 1</u>.

24      On  July  17,  2002,  we  held  that  Plaintiff  González  García's

25 political discrimination claims against Defendant PREPA were time-

26 barred, and entered summary judgment in favor of Defendant PREPA.

27 <u>Docket Document No. 70</u>.  We ordered Plaintiffs to show cause as to

28 why we should not also enter summary judgment in favor of Defendant

29 Cordero on statute of limitations grounds. <u>Id.</u>




Civil No. 98-1894 (JAF)                                                    -2-

1      On August 22, 2002, Plaintiffs submitted a motion explicating

2   why their claims against Defendant Cordero are not time-barred.

3   Docket Document No. 84.  Defendant Cordero tendered an opposition on

4   September 24, 2002.  On October 10, 2002, Plaintiffs tendered a sur-

5   reply.

6                                 I.

7                  **Factual and Procedural Synopsis**

8      Since the facts of this case have changed little since our

9   July 16, 2002 Opinion and Order, we largely reiterate the case's

10  factual background here.  See Docket Document No. 70.

11     Defendant PREPA is a public corporation and an instrumentality

12  of the commonwealth of Puerto Rico.  Defendant Miguel A. Cordero is

13  the executive director of PREPA and is a resident of Puerto Rico.

14  Plaintiffs' González García and Bracero Landrón are residents of

15  Puerto Rico.  Plaintiff González García is affiliated with the

16  "Partido Popular Democrático" (Popular Democratic Party, "PPD") and

17  Defendant Cordero is associated with the "Partido Nuevo Progresista"

18  (New Progressive Party, "NPP").

19     On February 13, 1984, Plaintiff González García[1] began working

20  as a temporary employee in the Human Resources Department of PREPA.

_____

[1]Future references to "Plaintiff" allude to Plaintiff González García.

Civil No. 98-1894 (JAF)                                                          -3-

1    Docket Document No. 46, Exh. 1.  Plaintiff became a permanent

2    employee of PREPA on August 11, 1985. Id. at Exh. 2.  In 1991,

3    Plaintiff González García became a General Supervisor of the

4    Department of Human Resources Evaluation at PREPA. Docket Document

5    No. 53, Exhs. I, II.  Plaintiff maintains that her position did not

6    involve functions of trust or the implementation of public policy.

7    Id.

8        While employed at PREPA, Plaintiff González García actively

9    participated in and organized PPD activities and events, and she

10   informed her co-workers and supervisors of her political affiliation.

11   Id. at Exh. I.

12       Plaintiffs allege that when Defendant Cordero was appointed as

13   the executive director of PREPA, he immediately began a campaign to

14   rid PREPA of employees associated with the PPD.  Plaintiffs allege

15   that Cordero demoted or removed thirteen PPD-affiliated employees,

16   and replaced them with members of the NPP. See id.

17       Plaintiffs also assert that Defendant Cordero began a campaign

18   of discrimination and harassment against Plaintiff González García

19   based on her political ideology, in an attempt to force her to resign

20   from her job. Id.

21       Plaintiff González García avers that Plaintiff's supervisors

22   made derogatory, harassing remarks to Plaintiff and other employees

Civil No. 98-1894 (JAF)                                                    -4-

1    affiliated with the PPD. Id. According to Plaintiff González García,

2    Defendant PREPA's officers "constantly" told her that they intended

3    to "get rid of" and "cut the throats" of the PPD members. Id.

4         Plaintiff González García alleges that on July 18, 1993, she was

5    demoted in title, salary, and benefits, and was transferred to the

6    Office  of  Health  and  Occupational  Security  to  work  as  an

7    Administrative Affairs Supervisor in the Preventative Health Program.

8    She contends that she was demoted without any explanation, and that

9    her previous position was filled by an employee associated with the

10   NPP. Id.

11        Plaintiffs claim that Defendants PREPA and Cordero constantly

12   added extra functions and duties to Plaintiff González García's new

13   position, and that her supervisors told Plaintiff that she performed

14   these duties too slowly. Id.

15        Plaintiff González García also alleges that Defendants PREPA and

16   Cordero refused to promote her based on her political affiliation.

17   Id. Plaintiffs allege that Defendant PREPA assigned Magali Alverio

18   to the position of Supervisor of the Department of Human Resources

19   Evaluation, and that Plaintiff González García rightfully deserved

20   that position. Id.

21        In response to the purported discrimination, Plaintiff González

22   García filed a number of internal grievances.  On March 4, 1994,

Civil No. 98-1894 (JAF)                                                    -5-

1    Plaintiff filed an internal complaint alleging that she was illegally

2    demoted and replaced based on her political affiliation. Id. at

3    Exh. V.  On March 8, 1994, Plaintiff González García filed an

4    official grievance alleging that the assignment of an NPP employee to

5    the position of Supervisor of the Department of Human Resources

6    Evaluation was an act of political discrimination. Id. at Exh. IV.

7    Plaintiff González García filed a grievance with Defendant PREPA's

8    Office of Equal Opportunity in Employment on November 15, 1995,

9    alleging harassment by one of her supervisors. See id. at Exhs. I, X.

10   On August 23, 1996, Plaintiff wrote a letter to Defendant Cordero,

11   explaining that she felt her supervisors at PREPA were harassing her

12   and discriminating against her. See id. at Exh. I, IV.  Plaintiff

13   alleges that no action was taken in response to her various

14   complaints.

15        On July 9, 1997, Plaintiff González García filed a complaint

16   with the Anti-Discrimination Unit ("ADU") of the Department of Labor

17   and Human Resources, in which she asserted political discrimination

18   on the basis of her affiliation with the PPD. Docket Document No. 46,

19   Exh. 3.

20        Plaintiff took a leave of absence due to a physical injury on

21   July 24, 1997. Id. at Exh. 4.  Plaintiffs proffer affidavits in which

22   they assert that while Plaintiff González García was on leave from

Civil No. 98-1894 (JAF)                                                -6-

1    PREPA, her supervisors called her at home almost every day and told

2    her that she must return to work or she would lose her job. Docket

3    Document No. 84, Exhs. I, XXII.  Plaintiff González García did not

4    return to work at PREPA after July 24, 1997. Docket Document No. 46,

5    Exh. 5.

6         Plaintiff González García submitted a letter of resignation on

7    March 24, 1998. Docket Document No. 46, Exh. 6.  Her resignation

8    became effective on March 31, 1998. Id.

9         Plaintiffs González García and Bracero Landrón filed the present

10   action on August 4, 1998. Docket Document No. 1.  In the complaint,

11   Plaintiff González García alleged that Defendants discriminated

12   against her based on her disability and her age.  On March 6, 2000,

13   Plaintiffs moved for a voluntary dismissal with regard to these

14   causes of actions. Docket Document No. 30.

15        Plaintiffs continued to assert that Defendants PREPA and Cordero

16   discriminated against Plaintiff González García based on her

17   political beliefs and affiliation, in violation of the First

18   Amendment, U.S. Const. amend. I,  42 U.S.C. § 1983, and Puerto Rico

19   law.

20        On May 21, 1999, Defendant Cordero filed a motion to dismiss.

21   Docket Document No. 7.  Defendants Cordero and PREPA filed an

22   additional motion to dismiss on January 7, 2000. Docket Document

Civil No. 98-1894 (JAF)                                                    -7-

1    No. 23.   On October 12, 2001, we denied Defendants' motions to

2    dismiss without prejudice in accordance with Local Rule 311.2. See

3    D.P.R. Loc. R. 311.2. Docket Document No. 45.

4        Defendant PREPA filed a motion for summary judgment on

5    October 22, 2001, arguing that Plaintiff González García's section

6    1983 claim was time-barred. Docket Document No. 46.   Plaintiffs

7    opposed the motion. Docket Document 53.   Defendant PREPA filed a

8    reply on March 14, 2002. Docket Document No. 57.

9        Defendant Cordero filed a motion to dismiss on November 5, 2001

10   on the grounds that: (1) Plaintiff González García has failed to

11   state a claim pursuant to section 1983; (2) her section 1983 claim is

12   time-barred; (3) Defendant Cordero is shielded from liability by the

13   doctrine of qualified immunity; (4) Plaintiff Bracero Landrón does

14   not have standing to assert a claim under section 1983; and (5) this

15   court should decline to assert supplemental jurisdiction over

16   Plaintiffs' state law claims. Docket Document No. 49.   Plaintiff

17   opposed the motion on the exclusive ground that Defendant Cordero's

18   motion was not filed in a timely manner. Docket Document No. 50.

19       On July 17, 2002, we granted Defendant PREPA's motion for

20   summary judgment because we found that Plaintiff González García's

21   section 1983 claim against Defendant PREPA was time-barred. Docket

22   Document No. 70.   We informed Plaintiffs that we intended to treat

Civil No. 98-1894 (JAF)                                             -8-

1    Defendant Cordero's motion to dismiss as a motion for summary

2    judgment, and ordered Plaintiffs to show cause as to why we should

3    not enter summary judgment in favor of Defendant Cordero on statute

4    of limitations grounds. Id.

5        On August 22, 2002, Plaintiffs submitted an opposition to

6    Defendant Cordero's motion to dismiss, with an accompanying

7    memorandum of law. Docket Document No. 84. On September 24, 2002,

8    Defendant Cordero tendered a reply in which he adopts and

9    incorporates PREPA's motion for summary judgment. Plaintiffs

10   tendered a sur-reply on October 10, 2002.

11                                    II.

12           Motion for Summary Judgment Under Rule 56(c)

13       The standard for summary judgment is straightforward and

14   well-established. A district court should grant a motion for summary

15   judgment "if the pleadings, depositions, and answers to the

16   interrogatories, and admissions on file, together with the

17   affidavits, if any, show that there is no genuine issue as to any

18   material fact and the moving party is entitled to a judgement as a

19   matter of law." FED. R. CIV. P. 56(c); see Lipsett v. Univ. of P.R.,

20   864 F.2d 881, 894 (1st Cir. 1988). A factual dispute is "material"

21   if it "might affect the outcome of the suit under the governing law,"

22   and "genuine" if the evidence is such that "a reasonable jury could

1  return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby,</u>

2  <u>Inc.</u>, 477 U.S. 242, 248 (1986).

3       The burden of establishing the nonexistence of a genuine issue

4  as to a material fact is on the moving party. <u>See</u> <u>Celotex Corp. v.</u>

5  <u>Catrett</u>, 477 U.S. 317, 331 (1986). This burden has two components:

6  (1) an initial burden of production, which shifts to the nonmoving

7  party if satisfied by the moving party; and (2) an ultimate burden of

8  persuasion, which always remains on the moving party. <u>See</u> <u>id.</u>  In

9  other words, "[t]he party moving for summary judgement, bears the

10  initial burden of demonstrating that there are no genuine issues of

11  material fact for trial." <u>Hinchey v. NYNEX Corp.</u>, 144 F.3d 134, 140

12  (1st Cir. 1998). This burden "may be discharged by showing that there

13  is an absence of evidence to support the nonmoving party's case."

14  <u>Celotex</u>, 477 U.S. at 325. After such a showing, the "burden shifts

15  to the nonmoving party, with respect to each issue on which he has

16  the burden of proof, to demonstrate that a trier of fact reasonably

17  could find in his favor." <u>DeNovellis v. Shalala</u>, 124 F.3d 298, 306

18  (1st Cir. 1997) (citing <u>Celotex</u>, 477 U.S. at 322-25).

19       Although the ultimate burden of persuasion remains on the moving

20  party and the court should draw all reasonable inferences in favor of

21  the nonmoving party, the nonmoving party will not defeat a properly

22  supported motion for summary judgment by merely underscoring the

Civil No. 98-1894 (JAF)                                                    -10-

1    "existence of some alleged factual dispute between the parties"; the

2    requirement is that there be a genuine issue of material fact.

3    Anderson, 477 U.S. at 247-48; Goldman v. First Nat'l Bank of Boston,

4    985 F.2d 1113, 1116 (1st Cir. 1993). In addition, "factual disputes

5    that are irrelevant or unnecessary will not be counted." Anderson,

6    477 U.S. at 248. Under Rule 56(e) of the Federal Rules of Civil

7    Procedure, the non-moving party "may not rest upon the mere

8    allegations or denials of the adverse party's pleadings, but . . .

9    must set forth specific facts showing that there is a genuine issue

10   for trial." FED. R. CIV. P. 56(e); see also Anderson, 477 U.S. at 256.

11   Summary judgment exists to "pierce the boilerplate of the pleadings,"

12   Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992),

13   and "determine whether a trial actually is necessary." Vega-Rodriguez

14   v. P.R. Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

15                                    III.

16                                 **Analysis**

17   A.    **Statute of Limitations**

18        Defendant Cordero argues that Plaintiff's claim of political

19   discrimination accrued on the date that she was demoted, July 18,

20   1993, and is therefore time-barred. Docket Document No. 49.

21        Plaintiff asserts that her political discrimination claim

22   accrued on one of three alternative dates: (1) March 24, 1998, the

Civil No. 98-1894 (JAF)                                          -11-

1    date she resigned from PREPA; (2) May 4, 1998, the date that her ADU

2    case was closed; or (3) August 19, 1998, the date that PREPA

3    dismissed her internal charges of discrimination. <u>Docket Document No.

4    84</u>.

5        1.   **Applicable Statute of Limitations**

6            To determine the applicable statute of limitations for this

7    action, we first turn to Section 1983 to determine its provisions.

8    Section 1983, however, lacks an accompanying federal statute of

9    limitations.[2] <u>See</u> 42 U.S.C. § 1983.  Consequently, we adopt relevant

10   provisions from the analogous statute of limitations of the forum

11   state. <u>See</u> <u>Wilson v. García</u>, 471 U.S. 261, 266-80 (1985) (directing

12   federal courts in section 1983 actions to borrow and apply a state's

13   statute of limitations for personal injury cases).

14           For section 1983, the most appropriate provision is the statute

15   of limitations for personal injury cases. <u>See</u> <u>Owens v. Okure</u>, 488

────────────────

[2]Section 1983 provides:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory or the District of Columbia, subjects,
> or causes to be subjected, any citizen of the United
> States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges,
> or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for
> redress.

42 U.S.C. § 1983.

Civil No. 98-1894 (JAF)                                    -12-

1    U.S. 235, 236 (1989).    In Puerto Rico, a one-year statute of

2    limitations governs personal injury actions. <u>See</u> 31 L.P.R.A.

3    § 5298(2) (1991).[3]    Therefore, we apply the one-year prescriptive

4    period to Plaintiff's section 1983 action. <u>See</u> <u>Rivera-Ramos v. Román</u>,

5    156 F.3d 276, 282 (1st Cir. 1998).

6        2.   <u>**Date of Accrual**</u>

7            "Although the limitations period is determined by state law, the

8    date of accrual is a federal law question." <u>Carreras-Rosa v. Alves-</u>

9    <u>Cruz</u>, 127 F.3d 172, 174 (1st Cir. 1997) (per curiam); <u>see also</u> <u>Rivera-</u>

10   <u>Ramos</u>, 156 F.3d at 282 ("For section 1983 actions, federal law

11   governs the date on which a cause of action accrues (i.e., when the

12   statute begins to run) while the length of the period and tolling

13   doctrine are taken from local law.") (internal citations omitted).

14   The one-year statute of limitations "begins running one day after the

15   date of accrual, which is the date plaintiff knew or had reason to

_____

[3]Section 5298 stipulates:

>    The following prescribe in one (1) year:
>    . . . .
>    (2)   Actions to demand civil liability for grave
>          insults or calumny, and for obligations arising
>          from the fault or negligence mentioned in
>          section 5141 of this title, from the time the
>          aggrieved person had knowledge thereof.

31 L.P.R.A. § 5298.

Civil No. 98-1894 (JAF)                                                     -13-

1    know of the injury." <u>Benitez-Pons v. P.R.</u>, 136 F.3d 54, 59 (1st Cir.

2    1998) (internal citations omitted).

3         Here, Plaintiff alleges three potential accrual dates.   We

4    examine each one in turn.

5         a.   <u>**Administrative Appeals**</u>

6         Plaintiff first alleges that during her thirteen-year tenure as

7    an employee at PREPA, she was harassed, demoted, transferred, and

8    denied a promotion based on her political affiliation.   Plaintiff

9    filed internal and administrative complaints based on the alleged

10   discrimination.   Plaintiff proposes that her section 1983 claim

11   accrued either when PREPA dismissed her internal charge of political

12   discrimination or when the ADU closed her administrative appeal.

13        Plaintiff has not proffered any support for her position that an

14   employment discrimination claim accrues following the dismissal of an

15   internal grievance or administrative appeal.   In fact, the case law

16   authoritatively dispenses with this argument.

17        A claim of political discrimination does not accrue upon the

18   completion of an administrative investigation into the employee's

19   allegation.   Rather, unambiguous and authoritative notice of the

20   adverse employment action itself triggers the limitations period. <u>See</u>

21   <u>Rivera-Muriente v. Agosto-Alicea</u>, 959 F.2d 349, 353 (1st Cir. 1992)

22   (section 1983 case).   As such, a limitations period normally starts

Civil No. 98-1894 (JAF)                                    -14-

1    to run when the employer's decision is made and communicated to the

2    affected employee. <u>Morris v. Gov't Dev. Bank of P.R.</u>, 27 F.3d 746,

3    750 (1st Cir. 1994) (section 1983 case).  A plaintiff does not need

4    to know of the discriminatory animus behind the adverse employment

5    action for the statute of limitations to begin to run. <u>Id.</u> at 749-

6    750.  Furthermore, a plaintiff does not need to know all of the facts

7    supporting her claim before the statute of limitations may commence.

8    <u>Id.</u> at 750 (internal citations omitted).

9         Therefore, the statute of limitations accrued on the date that

10   Plaintiff had notice of each of the adverse employment actions that

11   formed  the  basis  of  her  administrative  complaints. <u>See</u> <u>Docket</u>

12   <u>Document No. 70</u>.  Regardless of whether Plaintiff's internal and

13   administrative grievances were resolved within the statutory time

14   period, the completion of the internal and administrative appellate

15   processes does not impact our statute of limitations analysis.[4]

16

---

[4]Furthermore, we need not consider whether the statute of limitations
was tolled when Plaintiff González García filed her administrative
grievance.  In our Opinion and Order of July 12, 2002, we explained that
"even if we were to construe Plaintiff's complaint with the ADU as an
extrajudicial claim, its effect would be to restart the limitations period
on July 9, 1997.  Since Plaintiffs did not file suit within a year of the
date she filed the ADU complaint, the tolling provision does not impact our
analysis in the present case." <u>Docket Document No. 70</u>.

Civil No. 98-1894 (JAF)                                            -15-

1        **b.    Constructive Discharge**

2        **(1)   Standard**

3        Plaintiff González García claims that she was constructively

4    discharged on March 24, 1998.

5        Although resignation is ordinarily not a discriminatory act,

6    when a resignation constitutes a constructive discharge, it is

7    considered a discriminatory act. See <u>Draper v. Coeur Rochester, Inc.</u>

8    147 F.3d 1104, 1110-11 (9th Cir. 1998) (quoting <u>Young v. Nat'l Center</u>

9    <u>for Health Servs. Research</u>, 828 F.2d 235, 238 (4th Cir. 1987)).  To

10   establish a constructive discharge, a plaintiff must show "working

11   conditions so intolerable . . . that a reasonable person would feel

12   compelled to forsake his job rather than to submit to looming

13   indignities." <u>Landrau-Romero v. Banco Popular de P.R.</u>, 212 F.3d 607,

14   613 (1st Cir. 2000) (internal citations omitted)

15       However, "[i]f a plaintiff does not resign within a reasonable

16   time period after the alleged harassment, he was not constructively

17   discharged." <u>Id.</u> (citing <u>Smith v. Bath Iron Works Corp.</u>, 943 F.2d

18   164, 167 (1st Cir. 1991)).  In <u>Smith</u>, the First Circuit found that no

19   constructive discharge occurred where plaintiff quit six months after

20   the last reported incident of sex discrimination. 943 F.2d at 167.

21   Similarly, in <u>Landrau-Romero</u>, the First Circuit held that a seven-

22   month gap between the alleged employment discrimination and

Civil No. 98-1894 (JAF)                                          -16-

1    plaintiff's resignation was too great a time period to find that

2    plaintiff had been constructively discharged. 212 F.3d at 613.

3         **(2)  Evidence**

4         Here, Plaintiff left work for medical reasons on July 24, 1997

5    and tendered her resignation on March 24, 1998.  To state a claim of

6    constructive discharge, Plaintiff must allege that she resigned soon

7    after being harassed.  Plaintiff claims that she was harassed over

8    the phone in the eight-month period between when she stopped working

9    at PREPA and when she officially resigned.  She appears to assert

10   that this harassment contributed to the intolerable working

11   conditions that purportedly forced her to resign.

12        **(a)  Plaintiff Bracero Landrón's affidavit**

13        As evidence of the alleged constructive discharge, Plaintiff

14   Bracero Landrón proffers an affidavit from August 22, 2002, in which

15   he states that his wife, Plaintiff González García, was harassed by

16   her supervisors, Jorge Cuevas and Yelitza García, between December

17   1997 and March 1998. Docket Document No. 84, Exh. XXII.  He claims

18   that Cuevas and García called his wife three or four times a week and

19   ordered her to her to return to work or face strict disciplinary

20   actions. Id.

21        Defendant Cordero moves to strike Plaintiff Bracero Landrón's

22   affidavit statement on the ground that it contradicts his earlier

Civil No. 98-1894 (JAF)                                                -17-

1    deposition testimony.   In his deposition on September 22, 1999,

2    Plaintiff Bracero Landrón testified that on one or two occasions

3    after Plaintiff González García stopped working at PREPA, Cuevas

4    called Plaintiffs' house.   Plaintiff Bracero Landrón also testified

5    during his deposition that he did not know García.  He attested that

6    if she had called his house in the past he did not remember.

7         "When  an  interested  witness  has  given  clear  answers  to

8    unambiguous questions, he cannot create a conflict and resist summary

9    judgment with an affidavit that is clearly contradictory, but does

10   not give a satisfactory explanation of why the testimony is changed."

11   See Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 35 (1st Cir. 2001)

12   (citing Colantuoni v. Alfred Calcagni & Sons, 44 F.3d 1, 4-5 (1st

13   Cir. 1994)).   This edict helps ensure the credibility of evidence

14   presented  during  summary  judgment.   See  Hernandez-Loring  v.

15   Universidad Metropolitana, 233 F.3d 49, 54 (1st Cir. 2000).  "[T]he

16   rule is also a matter of policy: if prior statements under oath could

17   be disavowed at will after a motion is made, the other side would be

18   faced with a constantly moving target and summary dispositions made

19   almost impossible." Id.  However, a lapse in memory, confusion, or

20   newly discovered evidence may explain plainly inconsistent testimony.

21   Id.

Civil No. 98-1894 (JAF)                                              -18-

1    Plaintiff Bracero Landrón's August 22, 2002 affidavit statement

2    that García called frequently to make harassing phone calls

3    contravenes his earlier deposition testimony that he does not know

4    García or remember her calling his wife.  Furthermore, Plaintiff

5    Bracero Landrón's sworn statement that Cuevas called three or four

6    times a week contradicts his deposition testimony that Cuevas called

7    on one or two occasions after Plaintiff González García left work.

8    Plaintiffs' attorney asserts that Plaintiff Bracero Landrón did

9    not recall the telephone conversations during his deposition and that

10   only after three years of exposure to the documentary evidence was he

11   able to recollect the harassing nature of the phone calls.  However,

12   in the context of summary judgment, an explanation for changed

13   testimony must come from the affiant, not from his attorney.  See

14   generally FED. R. CIV. P. 56(e); Wynne, 976 F.2d at 794.  In his

15   affidavit, Plaintiff Bracero Landrón does not offer any reason for

16   his contradictory testimony.  Since Plaintiff Bracero Landrón has not

17   explained the contradiction, we will not consider his affidavit

18   testimony in the disposition of the present summary judgment motion.

19        (b)  **Plaintiff González García's Affidavit**

20   Plaintiff González García also offers an updated affidavit.  In

21   her affidavit of August 22, 2002, she asserts that while she was on

22   medical leave from work, Cuevas and García called her frequently at

Civil No. 98-1894 (JAF)                                         -19-

1   home and told her to report to work or they would terminate her.

2   Docket Document No. 84, Exh. I.  Plaintiff contends that during her

3   deposition on September 22, 1999, Defendant PREPA's attorney

4   interrupted her and did not allow her to testify that Cuevas made

5   harassing phone calls based on her political affiliation.

6        Defendant Cordero moves to strike this affidavit testimony on

7   the ground that it clearly contradicts Plaintiff's September 22, 1999

8   deposition testimony.

9        During Plaintiff's deposition, she testified that she received

10  many telephone calls at home while she was on leave from PREPA, and

11  that these were apparently social calls to see how she was doing.

12  Docket Document No. 55, Exh. A.  When asked about the contents of the

13  calls, Plaintiff did not testify that her supervisors harassed or

14  threatened her.[5]  Id.

---

[5]The relevant deposition testimony is as follows:

> Q: You never returned to work. And you were never
> within the environment of the office?
> A: The environment, as such, yes I was, because I
> received many telephone calls at home.
> Q: Uhum. From whom?
> A: Well from the personnel there, from Mr. Jorge
> Cuevas, who called me a lot, well my fellow workers
> called me a lot to see how I was doing, even Mrs.
> Yelitza García called me also.
> Q: They were social calls to find out how you were
> doing?
> A: Apparently.
> Q: Aside for asking you how you felt, did they ask
> you anything else, did they refer to anything else?
> A: Yes, I remember one call from Mrs. Yelitza García

Civil No. 98-1894 (JAF)                                                    -20-

1       Plaintiff's affidavit testimony that she received harassing,

2    discriminatory telephone calls during her leave of absence directly

3    contravenes her earlier deposition testimony that she received

4    frequent social phone calls.  Plaintiff now appears to argue that

5    during her deposition, she was unable to accurately convey the

6    contents of the telephone conversations with her supervisors.

7    Plaintiff attests that Defendant PREPA's attorney did not allow her

8    to fully explain the telephone conversations with Cuevas and Yelitza

9    García, which caused the discrepancy in testimony.    Plaintiff

10   maintains that during her deposition she repeatedly explained that

---

. . . when I answered she said 'Oh I thought I was
not going to find you at home, because I call there
and you are never in,' . . . when she achieved
contacting me she always said that she called my
house and couldn't get me.
Q: Okay. Aside from greeting you and giving you best
wishes at Christmas and asking where you were going
to spend New Year's Eve, were any other calls made?
A: Mr. Jorge Cuevas called me every week, he called
me.
Q: At any time did you have a friendship with Mr.
Jorge Cuevas?
. . .
A: I cannot say I had a friendship relationship with
him, because he was not my friend, he was simply my
fellow worker in the Authority and that was simply
the only place we saw each other. . .
. . .
Q: Nor did you give each other gifts, nor anything?
A: He, he put a lot of gifts on the desk.
Q: Why?
A: I don't know, because apparently he told me that
he liked me and he was always giving me some type of
small gift. . . .

Docket Document No. 55, Exh. A.

Civil No. 98-1894 (JAF)                                              -21-

1    her relationships with Cuevas and Yelitza García were not cordial and

2    that her supervisors harassed and discriminated against her based on

3    her political affiliation.

4        Under the present circumstances, Plaintiff's contention that she

5    did not have an adequate opportunity to respond to the deposition

6    questions does not satisfactorily explain the change in testimony.

7    Plaintiff's attorney was present at the deposition and had the

8    opportunity at that time to ask questions to clarify whether

9    Plaintiff's telephone conversations with Cuevas and Yelitza García

10   were harassing.   Plaintiff's attorney failed to do so.   Even if

11   Plaintiff felt that she was unable to explain the nature of the

12   telephone conversations during her deposition, she had a chance to

13   correct the alleged errors and explain the contradiction in her

14   affidavit of December 28, 2001.   The August 22, 2002 comes nearly

15   three years after Plaintiff's initial deposition, and only after we

16   refused to consider Plaintiff's affidavit of December 28, 2001 and

17   issued an order to show cause as to why this case should not be

18   dismissed.   Plaintiff's testimony has effectively become a moving

19   target and lacks adequate justification for the contradictions.

20   Therefore, we decline to consider the contradictory portion of the

21   updated  affidavit.

Civil No. 98-1894 (JAF)                                          -22-

1        Based on the record before us, there is no admissible evidence

2    that Plaintiff received harassing phone calls while she was on

3    medical leave.   As such, Plaintiff has not established that her

4    supervisors discriminated against her after she left work on July 24,

5    1997.   Plaintiff resigned on March 24, 1998, eight months after she

6    took a leave of absence from PREPA and nine months after the last

7    alleged act of discrimination.   Therefore, pursuant to the precept

8    laid out in <u>Landrau-Romero</u>, 212 F.3d at 613, and <u>Smith</u>, 943 F.2d at

9    167, we find that Plaintiff has not stated a timely claim of

10   constructive discharge.   Since Plaintiff has not sufficiently

11   established that an act of political discrimination occurred in the

12   one-year period before she filed the present action, her section 1983

13   claim is time-barred.

14       (3)  **Merits**

15       Furthermore, even if we were to consider Plaintiffs' most recent

16   affidavits as evidence of harassing phone calls, these statements

17   alone are insufficient to establish a claim of constructive discharge

18   against Defendant Cordero.   Plaintiffs have not proffered any

19   evidence that Cordero ordered the purportedly harassing phone calls

20   or knew that they were happening.   Since Plaintiffs have not

21   proffered evidence or even alleged that Defendant Cordero committed

22   an act of discrimination in the one-year period before they filed

Civil No. 98-1894 (JAF)                                          -23-

1    suit, summary judgment is appropriate. Cf. Lopez-Carrasquillo v.

2    Rubianes, 230 F.3d 409, 413 (1st Cir. 2000) (explaining that where a

3    plaintiff has not established that a defendant committed a

4    discriminatory act, there is no need to consider whether the

5    complaint was timely filed as to that act).

6    **B.    Supplemental Jurisdiction**

7         We decline to exercise supplemental jurisdiction over Plaintiffs'

8    associated state-law claims against Defendants. See Rivera v. Murphy,

9    979 F.2d 259, 264 (1st Cir. 1992)(quoting Cullen v. Mattaliano, 690

10   F.Supp. 93 (D. Mass. 1988) ("[I]t is the settled rule in this Circuit

11   that in a non-diversity case, where pendent state claims are joined

12   with a federal cause of action and that the federal cause of action is

13   [dismissed]...the pendent state claims should be dismissed.")).

14                                  **IV.**

15                               <u>Conclusion</u>

16        In accordance, with the foregoing we **GRANT** Defendant Cordero's

17   motion to dismiss. Docket Document No. 49.

18        **IT IS SO ORDERED.**

19        San Juan, Puerto Rico, this _12th_ day of December, 2002.

20

21                                       JOSE ANTONIO FUSTE
22                                       U. S. District Judge